**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | CASE NO.: |
| | ) | |
| *Plaintiff,* | ) | 2:19-CV-1409 |
| v. | ) | |
| | ) | |
| ADA LACAYO | ) | |
| | ) | |
| and | ) | |
| | ) | |
| RUSSELL T. BUNDY ASSOCIATES, INC., | ) | |
| D/B/A BUNDY BAKING SOLUTIONS, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SYNOVA, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

## VERIFIED COMPLAINT

Plaintiff Mallet and Company Inc. ("Mallet"), by and through its undersigned counsel, files the following Complaint against Ada Lacayo ("Lacayo"), Russell T. Bundy Associates, Inc. d/b/a Bundy Baking Solutions ("Bundy"), and Synova, LLC ("Synova") (collectively, "Defendants") and, in support thereof, states as follows:

## NATURE OF THIS ACTION

1.     Plaintiff Mallet is, and at all times relevant hereto was, a Pennsylvania corporation with its principal place of business in Carnegie, Pennsylvania.  Mallet is engaged in the business of, among other things, developing, manufacturing, and selling baking release agents and equipment used to apply baking release agents.

2.     Defendant Bundy is, and at all times relevant hereto was, an Ohio corporation with its principal place of business in Urbana, Ohio.

3.      Defendant Synova is, and at all times relevant hereto was, an Ohio limited liability company with its principal place of business in Westerville, Ohio.

4.      Upon information and belief, Defendant Lacayo is, and at all times relevant hereto was, an individual residing in Westmoreland County, Pennsylvania.

5.      Defendant Lacayo is a former employee of Mallet who is in willful disregard of her continuing contractual, statutory, and common law obligations to Mallet.

6.      After resigning her employment with Mallet, Lacayo began working with Bundy and its recently launched business, Synova.

7.      Both Bundy and Synova are direct competitors of Mallet.  Bundy, through its brand Shaffer, engages in the marketing and selling of equipment that applies release agents.  Synova manufactures and sells baking release agents.

8.      Lacayo's role with Bundy and Synova either has or will inevitably require her to use and disclose Mallet's confidential, proprietary, and trade secret information to benefit Bundy and/or Synova.

## JURISDICTION AND VENUE

9.      Plaintiff Mallet is, and at all times relevant hereto was, a corporation organized and existing under the laws of Pennsylvania with its principal place of business in Carnegie, Pennsylvania, which is within the Western District of Pennsylvania.

10.      Upon information and belief, Defendant Lacayo is, and at all times relevant hereto was, an individual residing in Westmoreland County, Pennsylvania, which is within the Western District of Pennsylvania.

11.      The Court has personal jurisdiction over Defendant Lacayo because, among other things, upon information and belief, she is a citizen and resident of the Western District of

Pennsylvania, transacts business in the Western District of Pennsylvania, owns real property in the Western District of Pennsylvania, signed a non-compete agreement in the Western District of Pennsylvania, and caused harm or tortious injury by an act or omission in the Western District of Pennsylvania.

12.     This Court has personal jurisdiction over Bundy and Synova because, among other things, upon information and belief, they transact business in the Western District of Pennsylvania, contract to supply services or things in the Western District of Pennsylvania and have caused harm or tortious injury to Mallet in the Western District of Pennsylvania.

13.     This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted a claim under the federal Defend Trade Secrets Act, and Plaintiff's other claims all arise out of the same series of transactions and occurrences.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because, among other things, a substantial part of the events or omissions giving rise to Mallet's claims occurred in the Western District of Pennsylvania.

15.     All conditions precedent to bringing this action have occurred, have been satisfied, or have otherwise been waived.

## BACKGROUND FACTS

### Mallet's Business

16.     Mallet is engaged in the business of, among other things, developing, manufacturing, and selling baking release agents and equipment used to apply baking release agents.

17.     Baking release agents are food-grade compounds applied to baking surfaces (e.g., baking pans) for ease of depanning or "releasing" a baked good from the baking pan.

18.    Mallet's baking release agents and equipment are used by industrial-scale bakeries throughout the United States and in other countries.

19.    The development, manufacturing, and selling of baking release agents and associated equipment is a highly competitive industry.

20.    In light of the competitive nature of this industry, Mallet's research, formulae, production processes, equipment designs, and applications for release agents, pricing, customer contacts and operations, and marketing strategies, among other things, constitute trade secrets and valuable confidential and proprietary business information.

21.    Mallet has expended substantial amounts of time, money, and effort to develop its trade secrets and valuable confidential and proprietary business information, and it derives independent economic value from this information not being generally known or readily ascertainable by proper means by others who can obtain economic value from its disclosure or use.

**Lacayo's Employment with Mallet**

22.    From June 23, 1997 to approximately January 2001, Mallet employed Lacayo as Technical Services Manager.

23.    On October 16, 2006, Mallet rehired Lacayo as Director of Laboratory Services.

24.    Throughout her employment with Mallet, Lacayo held a high-level position.  Her responsibilities included researching, developing, and marketing release agents and equipment for the application of release agents.

25.    In connection with performing her job duties for Mallet, Lacayo had access to, and gained knowledge of, a wide range of Mallet's trade secrets and confidential and proprietary information.  Among other things, she had access to technical information, including formulae, product composition, production processes, quality data, technical reports, lab studies, and

presentations.  She also worked closely with customer operations and had access to customer information, including customer visit reports, technical presentations to customers, and training materials.  In this capacity, Lacayo would have access to customer lists, sales, and sales volumes, as well as knowledge of pricing for release agents and equipment.  Mallet keeps such information in the strictest confidence because it would be invaluable to a competitor.

26.     Moreover, during her many years with Mallet, Lacayo accumulated significant know-how regarding the application of release agents to customer-specific equipment.  Lacayo would not have gained such knowledge but for her hands-on experience and insider knowledge at Mallet by virtue of her high-level position.

27.     Mallet takes active measures to protect the secrecy of its trade secrets and confidential information by limiting access to those employees having a need to know the same. For example, employees with access to trade secrets and confidential information are required to agree to confidentiality obligations such as those set forth in the Covenants described herein.

28.     Mallet takes such precautions to maintain the secrecy of its trade secrets and confidential information because it would suffer extreme and unfair competitive harm if such information were to be obtained by, or used on behalf of, a competitor.

29.     Lacayo was authorized to access Mallet's trade secrets and confidential information for Mallet's business purposes only.

30.     Lacayo utilized the training, knowledge, and skills she received from Mallet, as well as her insider's access to Mallet's confidential and proprietary information, to perform her job duties for Mallet.

**Lacayo's Non-Disclosure and Non-Competition Covenants with Mallet**

31.     As a condition of her employment with Mallet, on June 23, 1997, Lacayo executed

a Covenant (the "First Covenant").  *See* First Covenant, **Exhibit A**.

32.    As a condition of her rehire, on October 16, 2006, Lacayo executed a second Covenant (the "Second Covenant").  *See* Second Covenant, **Exhibit B**.  The First and Second Covenants are referred to collectively as the "Covenants."

33.    By signing each of the Covenants, Lacayo acknowledged that:

> in the course and scope of [her] employment it is and will be necessary for [her] to obtain information concerning Company's sales, sales volume, sales methods, customers, identity of customers, identity of key purchasing personnel in employ of customers, amount or kind of customer's purchases from Company, Company's sources of supply, identity or number of Company's salesmen or sales representatives, formulae, processes, methods, machines, manufactures, compositions, ideas, improvements or inventions belonging to Company or relating to Company's affairs . . .

*See* Exhibits A and B.

34.    Lacayo further recognized that the use or disclosure of such information "would constitute a breach of trust and cause irreparable injury to Company."  *Id.*

35.    Additionally, Lacayo acknowledged that it is:

> vital to the protection of Company's goodwill, and to the maintenance of Company's competitive position that [s]he be under restraint against disclosing to others or using to [her] own advantage any information regarding Company's affairs . . .

*Id.*

36.    Lacayo also agreed that:

> so long as [s]he is employed by Company and after [her] employment is terminated, whether with or without cause, [s]he shall not disclose any information regarding Company's affairs, and [s]he also covenants that so long as [s]he is employed by Company and for a period of three (3) years after [her] employment is terminated, whether with or without cause, [s]he shall not, directly or indirectly, as individual or partner, or as director or officer of any corporation, or in any other capacity whatsoever, be employed by or engage in, or be connected with, any business competitive with

Company's business, and [s]he agrees that any such direct or indirect connection that [s]he might have with any competing business enterprise shall be presumed to be incompatible with and a violation of [her] covenant not to use or disclose any information regarding Company's affairs.

*Id.*

37.    The Covenants also contain a choice of law provision stating that the Covenants will be governed by Pennsylvania law. *Id.*

## Lacayo's Unauthorized Retention of Mallet's Confidential, Proprietary, and Trade Secret Information

38.    On February 1, 2018, Lacayo gave advance notice of her voluntary resignation from her employment with Mallet, to be effective February 12, 2018.

39.    Shortly after her resignation, Mallet discovered that between her notice date and her resignation date, Lacayo had sent a series of emails and attachments from her Mallet email account to her personal Gmail account.

40.    The emails Lacayo sent included, among other things, screenshots of Mallet formulae, cost information for specific formulae, and correspondence between Mallet and certain of its customers.

41.    On March 20, 2018, Mallet sent Lacayo a cease-and-desist letter (the "Cease-and-Desist Letter") requesting that Lacayo immediately return all of Mallet's confidential, proprietary, and trade secret information and provide a written statement that: (1) all such information had been returned; (2) no such information was transmitted by Lacayo or anyone else to a third party; and (3) Lacayo will not in the future disclose to others or utilize for her own purposes any of Mallet's Confidential Information, or otherwise violate the terms of her Second Covenant. *See* March 20, 2018 Cease-and-Desist Letter, **Exhibit C**.

42.     The Cease-and-Desist Letter further urged Lacayo to honor her continuing obligations to Mallet, including her obligation not to work for a competitor. *Id.*

43.     On March 27, 2018, Lacayo responded by email, admitting that she had emailed to her personal Gmail account and retained Mallet's confidential, proprietary, and trade secret information.

44.     Lacayo claimed that she had not used such information, and said she would not use it in the future.

45.     Subsequently, Lacayo verbally advised Mallet that she had deleted all Mallet information in her possession, custody, or control.

46.     At or about that time, Mallet also advised Lacayo that if she disclosed to others or used for her own purposes any of Mallet's confidential, proprietary, and trade secret information, or otherwise violated her Covenants, it would take the necessary legal actions to protect its business interest.

### Bundy's and Synova's Hire of Lacayo to Directly Compete with Mallet

47.     In or about May 2019, after Lacayo's resignation from Mallet, Bundy launched a new business, Synova, for the manufacturing and selling of baking release agents and related application equipment.

48.     Bundy and Synova are direct competitors of Mallet.

49.     Upon information and belief, prior to May 2019, neither Bundy nor Synova had engaged in the business of formulating, preparing, or selling its own baking release agents.

50.     In or about late September 2019, Mallet learned that Bundy and/or Synova had hired Lacayo as Lab Director for Synova.

51.    Mallet also was aware that Bundy and/or Synova had previously hired William "Chick" Bowers, a former long-term employee of Mallet, as Synova's Business Development Manager.

52.    Indeed, in a press release regarding the launch of Synova, Bundy emphasized Lacayo's and Bowers' years of experience and Lacayo's "focused expertise on release agent development and their application equipment." *See* **Exhibit D**.

53.    Upon information and belief, Bundy, Synova, and Bowers were aware of the restraints on disclosure and competition that applied to Lacayo as a result of the Covenants.

54.    Of particular relevance, Bowers, as a former employee of Mallet, also had entered into similar non-compete and non-disclosure covenants with Mallet during his first period of employment with Mallet.  Bowers was subsequently rehired by Mallet and refused to sign the non-compete when he was rehired, but he was well aware of its content.

55.    Upon information and belief, Bundy, Synova, and Bowers were also aware of the fiduciary duty that applied to Lacayo under Pennsylvania law.

56.    Upon information and belief, Bundy, Synova, and Bowers gave substantial assistance or encouragement to Lacayo to effect the breach of her Covenants and fiduciary duty to Mallet.

57.    Through her work for Bundy and/or Synova, Lacayo has violated both her duties to Mallet under the Covenants as well as her legal duties to Mallet under Pennsylvania law.

58.    Upon information and belief, Lacayo disclosed and used Mallet's confidential, proprietary, and trade secret information to develop baking release agents and related equipment for her own benefit and for the benefit of Bundy and/or Synova.

59.    Absent Lacayo's employment with Bundy and/or Synova, Bundy and Synova would not possess the formulae, technology, or ability to manufacture and sell baking release agents and related equipment in direct competition with Mallet.

60.    Lacayo's position with Bundy and/or Synova has required or will require her to perform work that is the same or substantially similar to her work for Mallet. As a result Bundy and/or Synova have either obtained and used or will obtain and use Mallet's confidential and proprietary information and trade secrets.

61.    Despite Mallet's demands that she uphold the non-disclosure provisions in both Covenants and the non-compete provision in the Second Covenant, Lacayo has shown that she intends to continue working for direct competitors of Mallet, and Defendants have shown that they intend to wrongfully retain and utilize Mallet's confidential, proprietary, and trade secret information, for their own benefit.

**Damage to Mallet**

62.    Defendants' misappropriation, retention, and/or use of Mallet's confidential, proprietary, and trade secret information, as well as Lacayo's violation of the Second Covenant by working for direct competitors has caused Mallet irreparable harm, including harm to its goodwill, and will continue to do so unless Defendants are immediately enjoined from committing any further actions in violation of the Covenants with Mallet and Pennsylvania law.

63.    Greater harm would result from the denial of injunctive relief than from granting it. Without injunctive relief, Mallet will continue to suffer irreparable harm to its legitimate business interests. Lacayo, on the other hand, has no legitimate interest in continuing to violate the terms of her Covenants with Mallet and to harm its interests through her unlawful conduct.

Further, Bundy and Synova have no <u>legitimate</u> business interest in utilizing Mallet's wrongfully acquired, confidential, proprietary, and trade secret information.

64.    In addition, granting Mallet the relief it seeks will neither prevent Lacayo from finding or retaining employment with an employer that is not a competitor of Mallet and that does not have a need for Mallet's confidential, proprietary, and trade secret information.

65.    Granting injunctive relief will restore the parties to their status as it was immediately before Lacayo committed her wrongful conduct.

66.    Mallet is likely to prevail in this action on the merits because Lacayo's actions in working for a direct competitor and Defendants' misappropriation and use of Mallet's property, trade secrets, and confidential information clearly violate both the Covenants with Mallet and federal and Pennsylvania law.

67.    The injunctive relief sought by Mallet is reasonably suited to abate the offending conduct because it seeks no more than to enjoin Lacayo from further violating the Covenants with Mallet and to enjoin Defendants from violating federal and Pennsylvania law.

68.    Granting injunctive relief under these circumstances will have no adverse effect on the public interest. Pennsylvania law has long recognized that employers have legitimate business interests in enforcing non-competition agreements and protecting their trade secrets and other confidential information from wrongful theft, use, and disclosure.

69.    Injunctive relief is therefore appropriate and necessary to prevent Defendants from continuing to irreparably harm Mallet's business through their wrongful retention and use of Mallet's confidential, proprietary, and trade secret information and Lacayo's work for direct competitors in violation of the Covenants.

## COUNT I
## BREACH OF CONTRACT
### (against Lacayo)

70.     Mallet incorporates the averments contained in Paragraphs 1 through 69 above by reference as though fully set forth herein.

71.     On June 23, 1997 and again on October 16, 2006, Mallet and Lacayo entered into valid, enforceable Covenants, for which Lacayo received good and valuable consideration, and under which Lacayo agreed that: (1) during and after her employment with Mallet she would not disclose or use to her own advantage any information regarding Mallet's affairs (including, but not limited to, confidential information and trade secrets); and (2) for a period of three years after the termination of her employment with Mallet, she would not be employed by or engage in any competing business enterprise.

72.     The non-disclosure provision of both Covenants and the non-compete provision in the Second Covenant serve Mallet's legitimate interests in safeguarding against unfair competition and interference and the disclosure of Mallet's trade secrets and confidential and proprietary information.

73.     The restraints imposed by the non-disclosure provision of both Covenants and the non-compete provision in the Second Covenant are reasonable and narrowly tailored to protect Mallet's legitimate interests.

74.     The restraints imposed by the non-disclosure provision of both Covenants and the non-compete provision in the Second Covenant are consistent with applicable public policy.

75.     Lacayo breached her contractual duties by disclosing and/or using to her own advantage and/or the advantage of Bundy and Synova Mallet's trade secrets and confidential information, all of which was detrimental to Mallet.

12

76.     Lacayo further breached these contractual duties by working for Mallet's direct competitors, Bundy and/or Synova.

77.     Lacayo's breach has resulted in irreparable harm to Mallet's business and caused damages in an amount which cannot reasonably be ascertained at present.

78.     Unless restrained by this Court, Lacayo will continue her unlawful conduct, and Mallet will continue to be immediately and irreparably harmed.

79.     Lacayo's actions are intentional, willful, wanton, reckless, and calculated to harm Mallet in its business affairs.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendant Lacayo from continuing in her employment with Bundy and Synova and her other wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT II
## **BREACH OF FIDUCIARY DUTY**
### (against Lacayo)

80.     Mallet incorporates the averments contained in Paragraphs 1 through 79 above by reference as though fully set forth herein.

81.     A relationship of trust and confidence existed for many years between Mallet and Lacayo.

82.     Lacayo owed fiduciary duties to Mallet including, among other things, duties of good faith, fair dealing, honesty, loyalty, and nondisclosure.

83.     Lacayo has breached and continues to breach her fiduciary duties by misappropriating Mallet's property, trade secrets, and confidential information and by working for direct competitors.

84.    Lacayo's actions have proximately resulted in irreparable harm to Mallet's business and caused damages in an amount that cannot reasonably be ascertained at present.

85.    Unless restrained by this Court, Lacayo will continue her unlawful conduct, and Mallet will continue to suffer irreparable harm.

86.    Lacayo's actions are malicious, intentional, willful, wanton and reckless, and calculated to harm Mallet's business.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendant Lacayo from continuing her employment with Bundy and Synova and her other wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

**COUNT III**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(against Bundy and Synova)**

87.    Mallet incorporates the averments contained in Paragraphs 1 through 86 above by reference as though fully set forth herein.

88.    Mallet and Lacayo had a valid and enforceable contractual relationship, which was memorialized in the Covenants.

89.    Defendants Bundy and Synova knew or should have known of the existence of the contractual relationship between Mallet and Lacayo and the terms of such contractual relationship.

90.    Upon information and belief, Bundy and Synova intended to interfere with the contractual relationship between Mallet and Lacayo when they approached Lacayo to employ her in a position that would require her to unfairly compete with Mallet.

91.    Upon information and belief, Bundy and Synova purposely approached Lacayo with the specific intent to induce her to breach her contractual obligations with Mallet.

92.     Bundy and Synova took these actions without any privilege or justification to do so.

93.     In interfering with Lacayo's performance of her contractual obligations, Bundy and Synova acted wrongfully and tortiously.

94.     Bundy's and Synova's actions have proximately resulted in irreparable harm to Mallet's business and caused damages in an amount that cannot reasonably be ascertained at present.

95.     Unless restrained by this Court, Bundy and Synova will continue their unlawful conduct, and Mallet will continue to suffer irreparable harm.

96.     Bundy's and Synova's actions are malicious, intentional, willful, wanton and reckless, and calculated to harm Mallet's business.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Bundy and Synova from continuing to employ Lacayo contrary to the restrictions in the Second Covenant and from continuing their wrongful actions, as well as an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT IV
## <u>FEDERAL DEFEND TRADE SECRETS ACT</u>
### (against Defendants)

97.     Mallet incorporates the averments contained in Paragraphs 1 through 96 above by reference as though fully set forth herein.

98.     The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce."  *See* 18 U.S.C. § 1832, *et seq.*

99.    "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information" that derive independent economic value from not being generally known or readily accessible by the public using proper means and which the owner has taken reasonable steps to protect.  18 U.S.C. § 1839(3).

100.    During her employment with Mallet, Lacayo had access to confidential and proprietary information that constituted Mallet's trade secrets.  As described above, this included, but was not limited to, technical information (including formulae, product composition, equipment design and engineering, production processes, quality data, technical reports, lab studies, presentations, and application know-how) as well as customer information (including customer visit reports, technical presentations to customers, and training materials).

101.    Upon information and belief, Defendants have shared this information with one another or have used this information themselves to directly compete with Mallet.

102.    This information was related to multiple products or services used in, or intended for use in, interstate commerce.

103.    This trade secret information:  (1) is not known outside Mallet; (2) is known only by Mallet employees, including Lacayo; (3) is subject to reasonable measures to guard the secrecy of the information, including Mallet's non-disclosure and non-competition Covenants; (4) is valuable; and (5) is difficult for others to properly acquire or duplicate independently.

104.    Lacayo knew that she had a duty, pursuant to the Covenants and Mallet's policies, to maintain the secrecy of Mallet's confidential information and trade secrets.

105.    Defendants used this information to directly compete with Mallet in the baking release agent and equipment industry.

16

106.    Defendants used this information without Mallet's knowledge, consent, or authorization to benefit them in a manner that will cause irreparable harm to Mallet.

107.    Defendants' actions constitute actual and continuing misappropriation in violation of the DTSA.

108.    Mallet has suffered damages and irreparable harm as a result of Defendants' breaches of the DTSA.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Bundy and Synova from continuing to employ Lacayo contrary to the restrictions in the Second Covenant and from continuing their wrongful actions, as well as an award of compensatory damages, exemplary damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT V
## ACTUAL OR THREATENED MISAPPROPRIATION OF
## TRADE SECRETS AND CONFIDENTIAL INFORMATION IN VIOLATION OF THE
## PENNSYLVANIA UNIFORM TRADE SECRETS ACT
### (against Defendants)

109.    Mallet incorporates the averments contained in Paragraphs 1 through 108 above by reference as though fully set forth herein.

110.    Mallet, through its experience, expertise, and substantial investment of time, money, and resources, has developed confidential, proprietary, and trade secret information that belongs to Mallet for its sole use and benefit, including, but not limited to, technical information (including formulae, product composition, production processes, quality data, technical reports, lab studies, presentations, and application know-how) as well as customer information (including customer visit reports, technical presentations to customers, and training materials).

111.   Such information constitutes "trade secrets" within the meaning of the Pennsylvania Uniform Trade Secrets Act, as it is not generally known to and is not readily ascertainable by proper means by other persons who can obtain economic value from its disclosure. 12 Pa. Cons. Stat. § 5302.

112.   Mallet makes reasonable efforts to safeguard and maintain its trade secrets from disclosure by limiting the distribution of this information to key, trusted employees and by requiring such employees to execute restrictive covenants like the ones at issue in this case.

113.   Mallet has a legitimate, protectible interest in its confidential, proprietary, and trade secret information.

114.   By virtue of her employment by Mallet, Lacayo owed a legal duty to Mallet not to use, disclose, or otherwise misappropriate such confidential, proprietary, and trade secret information.

115.   Defendant Lacayo misappropriated, used, and/or disclosed, or will inevitably use or disclose, Mallet's trade secrets.

116.   At the time of the misappropriation, disclosure, and/or use, Lacayo knew or had reason to know that her knowledge of the trade secrets was acquired under circumstances giving rise to a duty to maintain their secrecy.

117.   By virtue of Lacayo's conduct, Lacayo breached her legal duty not to misappropriate Mallet's confidential trade secret information.

118.   Upon information and belief, Bundy and Synova obtained Mallet's confidential trade secret information through improper means by receiving it from Lacayo.

119.   Upon information and belief, Defendants utilized such information to formulate, manufacture, and sell baking release agents and equipment for the benefit of Defendants.

120.    Defendants' actions have proximately resulted in irreparable harm to Mallet's business and caused damages in an amount that cannot reasonably be ascertained at present.

121.    Unless restrained by this Court, Defendants will continue their unlawful conduct, and Mallet will continue to suffer irreparable harm.

122.    Defendants' actions are malicious, intentional, willful, wanton and reckless, and calculated to harm Mallet's business.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Lacayo, Bundy, and Synova from continuing to employ Lacayo contrary to the restrictions in the Second Covenant and from continuing their wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT VI
## INEVITABLE DISCLOSURE OF CONFIDENTIAL INFORMATION
## AND TRADE SECRETS
### (against Defendants)

123.    Mallet incorporates the averments contained in Paragraphs 1 through 122 above by reference as though fully set forth herein.

124.    Lacayo possesses confidential and trade secret information belonging to Mallet including, but not limited to, technical information (including formulae, product composition, equipment design and engineering, production processes, quality data, technical reports, lab studies, presentations, and application know-how) as well as customer information (including customer visit reports, technical presentations to customers, and training materials).

125.    Mallet takes reasonable steps to maintain confidentiality with respect to its confidential and trade secret information, including the information referenced above.

126.    Upon information and belief, the nature of Lacayo's work for Bundy and/or

19

Synova, who are direct competitors of Mallet in the baking release agent and equipment industry, makes Lacayo's disclosure of Mallet's confidential information and trade secrets inevitable.

127.    Defendants' actions have caused Mallet to suffer damages, in an amount to be determined at trial.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Lacayo, Bundy, and Synova from continuing to employ Lacayo contrary to the restrictions in the Second Covenant and from continuing their wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

**COUNT VII**
**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**
**(against Bundy and Synova)**

128.    Mallet incorporates the averments contained in Paragraphs 1 through 127 above by reference as though fully set forth herein.

129.    A relationship of trust and confidence existed between Mallet and Lacayo.

130.    Lacayo owed fiduciary duties to Mallet including, among other things, duties of good faith, fair dealing, honesty, loyalty, and nondisclosure.

131.    Lacayo has breached and continues to breach her fiduciary duties by misappropriating, disclosing, and utilizing Mallet's confidential, proprietary, and trade secret information and by working for direct competitors, Bundy and Synova.

132.    Upon information and belief, Bundy and Synova were aware of the restraints on disclosure and competition that applied to Lacayo as a result of the Covenants, especially as Bowers was previously employed by Mallet and had knowledge of Mallet's use of non-disclosure and non-competition covenants.

133.    Upon information and belief, Bundy and Synova were also aware of the fiduciary duty that Lacayo owed to Mallet under Pennsylvania law.

134.    Upon information and belief, Bundy and Synova gave substantial assistance or encouragement to Lacayo to effect the breach of her fiduciary duty owed to Mallet.

135.    Bundy's and Synova's actions have proximately resulted in irreparable harm to Mallet's business and caused damages in an amount that cannot reasonably be ascertained at present.

136.    Unless restrained by this Court, Bundy and Synova will continue their unlawful conduct, and Mallet will continue to suffer irreparable harm.

137.    Bundy's and Synova's actions are malicious, intentional, willful, wanton and reckless, and calculated to harm Mallet's business.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Bundy and Synova from continuing to employ Lacayo during her contractual non-compete period as well as other wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT VIII
## CONVERSION
### (against Defendants)

138.    Mallet incorporates the averments contained in Paragraphs 1 through 137 above by reference as though fully set forth herein.

139.    Mallet is the proper owner of its confidential and proprietary information.

140.    Upon her resignation from Mallet, Lacayo wrongfully retained confidential and proprietary information belonging to Mallet.

141.    Upon information and belief, Lacayo disseminated such information to Bundy and Synova.

142.    Through Defendants' actions, Defendants unlawfully deprived Mallet of its property rights in its confidential and proprietary property without Mallet's consent and without lawful justification.

143.    Lacayo, individually and as an agent of Bundy and Synova, has further unlawfully interfered with Mallet's property rights by refusing to return its property, even after Mallet demanded that she do so.

144.    Defendants have acted in bad faith by not only wrongfully removing Mallet's property upon her resignation, but also by upon information and belief, retaining it despite Mallet's demand for the return of such information.

145.    Defendants' actions have interfered and continue to interfere with Mallet's right of control in its property.

146.    This unlawful conduct has resulted in significant inconvenience and expense for Mallet, which has had to retain counsel and incur legal fees in its efforts to secure the return of its property.

147.    Defendants' wrongful conduct has therefore so seriously interfered with Mallet's right to possession of this property as to justify requiring her to fully compensate Mallet for its value.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Lacayo, Bundy, and Synova from continuing their unlawful, wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## COUNT IX
## <u>UNFAIR COMPETITION</u>
### (against Defendants)

148.    Mallet incorporates the averments contained in Paragraphs 1 through 147 above by reference as though fully set forth herein.

149.    Mallet has the right to be free from unfair competition caused by Defendants' misuse of its confidential, proprietary, and trade secret information.

150.    Defendants Bundy and Synova hired Lacayo with actual and/or constructive knowledge of the Covenants (especially as Bowers was previously employed by Mallet and had knowledge of Mallet's use of non-disclosure and non-competition covenants), including the restrictive covenants contained therein, and willfully disregarded the restrictions imposed by the Covenants.

151.    Upon information and belief, Defendants have used and intend to continue to use confidential, proprietary, and trade secret information belonging to Mallet of which Lacayo has knowledge in order to gain an unfair competitive advantage over Mallet.

152.    The conduct of Defendants complained of herein constitutes unfair competition. Defendants have benefited by, or will benefit by reason of, and as a direct result of, their acts of unfair competition.

153.    Mallet has no adequate remedy at law by which to prevent Defendants from unfairly competing with it, and money damages alone cannot compensate Mallet for this unfair competition.

154.    Defendants' acts of unfair competition are willful, wanton, and malicious.

155.    Unless restrained by this Court, Defendants will continue their unlawful actions and Mallet will be irreparably harmed.

156.    As a proximate result of Defendants' unlawful conduct, Mallet has suffered damages in an amount which cannot be ascertained at present.

WHEREFORE, Plaintiff Mallet respectfully requests injunctive relief barring Defendants Lacayo, Bundy, and Synova from continuing their wrongful actions, an award of compensatory damages, punitive damages, attorneys' fees, and any other relief this Court deems appropriate, as set forth more fully in the Prayer for Relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Mallet demands judgment against Defendants Ada Lacayo, Russell T. Bundy Associates, Inc. d/b/a Bundy Baking Solutions, and Synova, LLC and requests the following relief:

1.    The issuance of special, preliminary, and permanent injunctions that:

    (i)    Enjoin Lacayo from working, directly or indirectly, in any capacity, for Bundy, Synova, or any competitor of Mallet for three (3) years from the date of the entry of the injunction;

    (ii)    Enjoin Defendants from using Mallet's confidential, proprietary, and/or trade secret information in any respect;

    (iii)    Enjoin Defendants from formulating, manufacturing, distributing, or selling baking release agents and related equipment for three (3) years from the date of the entry of the injunction;

    (iv)    Enjoin Defendants from soliciting and/or unlawfully interfering with the business, employment, or contractual relationship between Mallet and its agents, employees, and independent contractors who have access to Mallet's confidential, proprietary, and/or trade secret information;

    (v)    Enjoin Defendants from inducing current and former Mallet agents, employees, and independent contractors to violate their restrictive covenants with Mallet;

    (vi)    Require Defendants to preserve and return to Mallet all of Mallet's confidential, proprietary, and/or trade secret information in their possession, custody, or control; and

(vii)    Require Defendants to disgorge all benefits resulting from Defendants' use of Mallet's confidential, proprietary, and/or trade secret information.

2.    An award of actual and compensatory damages in an amount to be determined at trial.

3.    An award of the attorneys' fees and expenses incurred in the prosecution of this action.

4.    Payment to Mallet of the revenue of Synova from the date of Lacayo's hire to work for Bundy and/or Synova through the present.

5.    Punitive damages in an amount to be determined at trial.

6.    Any other relief this Court deems appropriate.

Dated:  October 29, 2019                          Respectfully submitted,

                                                  */s/ Marla N. Presley*
                                                  Marla N. Presley (91020)
                                                  Laura C. Bunting (307274)
                                                  **Jackson Lewis P.C.**
                                                  Liberty Center
                                                  1001 Liberty Avenue
                                                  Suite 1000
                                                  Pittsburgh, PA 15222
                                                  (412) 232-0404 (Telephone)
                                                  (412) 232-3441 (Fax)
                                                  Marla.Presley@jacksonlewis.com
                                                  Laura.Bunting@jacksonlewis.com

                                                  *Counsel for Plaintiff*

## VERIFICATION

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that I have reviewed the foregoing Complaint, and that the allegations are true and correct.

Dated:    October 29, 2019

By:  Shane Porzio
Title:  SVP and Head of Vantage Food
Vantage Specialties Inc.