# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 19-1409 |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ADA LACAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM AND ORDER**

### I. **MEMORANDUM**

Defendants' Motion for Summary Judgment (Doc. 256) will be denied. Plaintiffs' Motion for Summary Judgment (Doc. 264) will be granted regarding Defendants' Counterclaim for a declaratory judgment, but otherwise denied.[1]  These rulings should come as little surprise.  As to why, the Court will speak bluntly.

The undersigned has presided over a number of cases in which former employees are alleged to have taken their prior employers' confidential business information.  The specific legal theories for recovery aside, the undersigned can recall only one other case in which the plaintiff's evidence appeared as incriminating.  In that one, the plaintiff-employer possessed video footage from its office lobby, depicting the former employee removing bankers boxes of business documents from its premises.  Once counsel reviewed the footage, the case soon was resolved without further judicial involvement.

---

[1] Vantage is not a plaintiff, but rather a Counterclaim Defendant.  Given their alignment of interest, and for the sake of efficiency, the Court will refer to Mallet and Vantage collectively as "Plaintiffs."

In the undersigned's view, the distinction between the two cases is largely one of format (*i.e.*, paper documents versus digital copies). *See generally* 3d Cir. Opinion (Doc. 143-1) at pgs. 15-19 (summarizing Lacayo's and Bowers's efforts at digitized abscondence, and Bundy's encouragement thereof).

To the extent that any party, or their legal arguments, appear the subject of favor or disfavor, hopefully counsel and their clients understand why. All parties came to this Court as strangers. The undersigned has no "horse in the race." Never has. Other than, of course, a desire to advance the interests of justice, and an internal barometer for telling "right" from "wrong." Although the Court should not speak for the Circuit panel, the same appears true of them. *Cf. id.* at 15, 17-18 (noting that Lacayo "secretly" accepted a position with Synova, while still employed with Mallet; that she "purloined documents" and "touted her ability to match a Mallet product for a customer"; and characterizing Bowers as "not [being] burdened with a sense of loyalty either," having forwarded Mallet's "customer and product information to his wife's email account"; and having "shar[ed] information with Mr. Bundy . . . about Mallet's business," while still in its employ).

The individual Defendants, by all accounts, have suffered severe personal, professional and financial consequences. It seems fair to conclude that, as to them at least, a pound of flesh has been exacted. They now appear pawns in a game.

The corporate Defendants, however, appear unapologetic and undeterred. All of the business enterprises are well funded, and they are entitled to – and have enjoyed – a right of zealous advocacy. Defendants should not be surprised, however, when Plaintiffs' claims are allowed to proceed, except as strictly constrained by law. As "gaslighting" becomes a more prominent feature of modern society, counsel and the parties would be well served, in this case

and others, to "check" themselves against falling sway to their own advocacy. Neither lawyer nor client benefits from the development of unreasonable expectations.

On the other hand, Plaintiffs' indignance, and determination to exact more pounds of flesh, do not appear entirely virtuous. In addition to its stated-business of "developing, manufacturing, and selling baking release agents and [associated] equipment," Doc. 40, Mallet appears surprisingly comfortable, and enthusiastic, in its role as a civil litigant. And though many of Plaintiffs' positions enjoy legal support, their enthusiasm appears hard to distinguish from anticompetitive spirit.

Against this backdrop, the Court reaches the parties' Motions for Summary Judgment. Defendants' Motion will be denied. The Court declines counsel's invitation to parse, item by item, the information Mallet claims is trade-secreted. It suffices to say that material disputes of fact are inevitable, and have been shown by Plaintiffs. It is not a good use of the Court's time to parse them, line-by-line, and doing so would be contrary to the rule against piecemeal litigation.

Whether Plaintiffs did enough to protect their alleged trade secrets likewise evades resolution on summary judgment. Arguments regarding damages are reserved for trial (and likely will result in a "battle of the experts").

Defendants may rest assured that, regardless of the outcome regarding trade secrets, the Court will retain supplemental jurisdiction over Plaintiffs' state law claims. This Court is deeply invested, and the undersigned cannot abide requiring a state court to start afresh.

For reasons previously stated, and the ones identified in Mallet's opposition (which are incorporated by reference), the Court does not find the covenants in question to be unenforceable as a matter of law. Rather, the Court concludes that jury determinations are required regarding: whether a binding covenant continued, as related to Bowers (*see* discussion, immediately *infra*);

the materiality of the alleged breaches[2]; and whether, and the extent to which, compensable injuries resulted.

To the extent Defendants claim that Bowers was not subject to a nondisclosure agreement, beginning November 30, 2015, material issues of disputed fact remain. *Compare* Doc. 284 at ECF banner-page 44 of 50, ¶ 64 ("Bowers agreed to return to Mallet[, effective November 30, 2015,] subject to the agreement that [he] would not be subject to any restrictive covenants.") *with* Doc. 291 at pg. 55 of 255, ¶ 139 (Plaintiffs dispute that Bowers terminated his employment in 2015; that he thus "return[ed]" to work at Mallet; and that any change was made regarding his preexisting covenant).[3]

The above analyses are dispositive of Defendants' Counterclaim for a declaratory judgment. Doc. 179, at Count I. The request for declaratory relief presents a flip-side of the same coin. Jury issues remain, and the Court will not declare the contract provisions unenforceable as a matter of law. Thus, Plaintiffs' Motion for Summary Judgment will be granted in this limited respect.

More generally, the Court's dim view of the Counterclaims has not brightened. *Cf.* Doc. 234 at pg. 1 ("Bundy's claims . . . evoke perceptions of makeweight [retorts] and litigation strategy."). Although Plaintiffs' Motion presents close questions, the Court

---

[2] Int'l Diamond Imp., Ltd. v. Singularity Clark, 40 A.3d 1261, 1272 (Pa. Super. 2012) ("courts consistently have treated inquiries into the materiality of a given breach as fact questions rather than questions of law to be decided from the bench") (citations omitted).

[3] Contrary to defense counsel's suggestion, the Court of Appeals for the Third Circuit did not conclude that Bowers lacked a non<u>disclosure</u> agreement. It merely observed that Plaintiffs had not "pleaded the existence of [non<u>competition</u>] agreement," effective at the time of his departure in 2018. Doc. 143-1 at 12 n.9. The Circuit Court expressly acknowledged Plaintiffs' allegation that, "[a]s a condition of his employment, Bowers entered into a non<u>disclosure</u> agreement." *Id.* at 12 (in the body, not a footnote, of the Opinion) (emphasis added).

nevertheless concludes that summary judgment is inappropriate. The tortious interference claim (Count II) requires determinations regarding motive, intent and privilege. These are classic jury questions, and the Court will not usurp the role.

As for Defendants' unfair competition claims (Count III), the whiff of anticompetitive spirit – referenced earlier – dovetails with the Court's denial of summary judgment. Should a jury "break Defendants' way" on all of Plaintiffs' claims, it is not inconceivable that Defendants may be found the victims. In Pennsylvania, unfair competition may result from tortious interference with contracts, or the improper inducement of another's employees. Synthes v. Globus Med., Inc., 2005 WL 2233441, *8 (E.D. Pa. Sept. 14, 2005) (citations omitted).[4] Summary judgment on the tort-based Counterclaims will be denied.[5]

By the same token, the Court rejects Defendants' arguments regarding Plaintiffs' tort claims, pleaded in the alternative. The Court adopts the reasoning in Plaintiffs' briefing. *See* Doc. 289 at 15-17 (citing, among other things, a court decision indicating that, if the tort

---

[4] Although the Court declines to reach the issue, given that counsel have not specifically addressed it, Defendants also may urge application of the "catch-all" provision in the Restatement (Third) of Unfair Competition. *See id.* at 8-9 (noting that several Pennsylvania courts have cited this source, and that its catch-all provision contemplates a cause where the tortfeasor is alleged to have "institute[ed] or threaten[ed] to institute groundless litigation"). While Defendants' invocation of this standard, vis-à-vis the named-parties in this case, would reflect a breathtaking level of temerity, their allegations regarding former Mallet employee Cathlene Colley appear consistent with the theory. *See* Doc. 179 at ⁋⁋ 137-142 (alleging that Plaintiffs have gained an unfair advantage by threatening or inducing other former employees to sever ties with Defendants, under the pretense of enforcing restrictive covenants).

[5] The Court likewise declines to reach Vantage's statute of limitations arguments. They relate only to Vantage, not Mallet, and the Court sees little practical benefit to the discussion. As to the merits, Defendants have made sufficient arguments for relation-back. Vantage has suffered no prejudice, and it knew or should have known that the Counterclaims would have been brought against it, too, but for a mistake concerning party identity.

claims were dismissed, and should the jury find the plaintiff's primary theories deficient, the plaintiff improperly would be left without a remedy).

Consistent with the foregoing, the Court hereby enters the following:

## II.  ORDER

Defendants' Motion for Summary Judgment (**Doc. 256**) is **DENIED**.  Plaintiffs' Motion for Summary Judgment (**Doc. 264**) is **GRANTED**, regarding Defendants' Counterclaim for a declaratory judgment (Count I), and otherwise **DENIED**.

Soon, the Court will order a telephonic status conference, to discuss trial and related deadlines.  All counsel intending to participate at trial, and the unrepresented parties, shall attend by telephone, and have their calendars available for scheduling purposes.

IT IS SO ORDERED.


March 29, 2024                                              s/Cathy Bissoon
                                                            Cathy Bissoon
                                                            United States District Judge

cc (via ECF email notification):

All Counsel of Record

Ada Lacayo, pro se (a CM/ECF registered user)


cc (via regular email):

William Chick Bowers, pro se (email address:  chica965@yahoo.com)