**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-cv-01409-CB |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ADA LACAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## **ORDER**

This Order resolves all of the Motions in Limine.  First, the Court will rule on the non-expert-related Motions, in the order of filing, and then experts.  The experts Motions will be addressed in filing-order, although Motions regarding competing experts, by specialty, will be grouped.

## **NON-EXPERT MOTIONS**

### **Doc. 344  Defendants' Motion Regarding Character Evidence As to Ada Lacayo**

The Motion is **GRANTED**, as follows.  Plaintiffs have failed to show that the "Franks letter," Doc. 294-52 (sealed), addressed Lacayo's alleged difficulty meeting deadline(s) in creating release agent formulas.[1]  The letter discusses her alleged inability "to meet deadlines for the Food Safety Program."  *Id.* at ECF-header pg. 5 of 7.  Those do not sound like the same thing, and if they are, Plaintiffs have failed to show it.  The letter is inadmissible under Fed. R.

---

[1]  To the extent that the Court can cite to unsealed portions of the record, it will.  To the extent that counsel have not done the same, they should moving forward.  The redacted version of the Franks letter is unhelpful, because all of the letter's contents are redacted.

Evid. 404 (references hereafter will be to "Rule [no.]"); so too the proposed testimony regarding the same. *Cf.* Doc. 345 at pg. 4 of 8. Defendants' objection to the "designated" but unidentified testimony of Robert Bundy and William Hallmark "regarding Lacayo's reputation for being untruthful" is overruled. *Id.* at 5 of 8. Evidence regarding reputation invokes Rule 608, and the Court cannot resolve such matters in a vacuum. Finally, Defendants' objection to Plaintiffs' expert Eric Decker does not belong in this discussion. Decker will be addressed separately below.

### Doc. 346  Defendants' Motion Regarding Former Mallet Employees

This Motion, regarding former employees Shane Zhou, Anthony "Jim" Galicic and Cathlene Colley, is **DENIED**. The Court disagrees that evidence related to them would be more prejudicial than probative. The individuals are woven into the fabric of this case.

### Doc. 348  Defendants' Motion Regarding Single Ingredient, Two Ingredient, Commoditized And Obsolete Products

The Motion is **GRANTED** only as to Plaintiffs' two single-ingredient formulas, asserted trade secrets 35 and 36. *See* Doc. 400 at internal pg. 2 n.1 (Plaintiffs concede these items). Otherwise, the Court agrees with Plaintiffs that MILs are not an invitation to revisit summary judgment, and the Motion (except as above) is **DENIED**. Plaintiffs, however, should think long and hard about the challenges. Achieving a jury verdict on "trade secrets" that fail the standards in *Mallet*, *Oakwood* and the precedent cited therein is *detrimental* to them given the attendant risks.

Twice now, Defendants have proposed that all 65 asserted trade secrets (now 63) be listed in the verdict form for individual consideration. *See* Doc. 418 at pg. 12-13 of 30; Doc. 431 at pg. 8-9 of 47. While jury instructions remain under advisement, it appears to the

Court that Plaintiffs have asserted far too many items for listing. *See generally* FEDERAL

JUDICIAL CENTER, TRADE SECRET CASE MANAGEMENT JUDICIAL GUIDE (2023) at 10-10

(the FJC Guide's sample verdict form "assumes there is a list of trade secrets" that is not

"so lengthy that answering interrogatories" one-by-one "is unwieldy").

From Defendants' perspective, the number of asserted trade secrets is out of their control;

and the Court must guard against undue prejudice. If the asserted trade secrets are not

individually listed, a disinclination to rely on weaker claims is, or very much should be,

"baked in." If Plaintiff introduces evidence of purported trade secrets that cannot meet the

standards, a favorable verdict may be shrouded with doubt. If Plaintiffs secure a verdict,

it is quite safe to assume that challenges will follow. And the more questionable a claim of

secrecy, the less secure the verdict. If the prior appeal cautions anything, it is the perils of

insufficient clarity.

Under the circumstances, Plaintiffs should consider whether a narrowing of their list is

beneficial, to them, Defendants and the process – even to the point that the items may be listed

on the verdict form. Otherwise, Plaintiffs should appreciate that a favorable verdict may only be

as reliable as the evidence on their weakest claimed trade secret. Should Plaintiffs determine to

narrow their focus, they must notify Defendants and the Court as soon as is practicable.

Trial-time is at a premium, and eleventh hour "adjustments" will invite claims of unfairness.

**Docs. 350 & 386  The Parties' Dueling Motions Regarding Deposition Designations
and Related Challenges**

Plaintiffs' Motion at Doc. 386 is taken out of order, and resolved along with Defendant's

Motion at Doc. 350, because the answers are the same. The Motions are **DENIED**. The issues

presented are too specific, and too many, for the Court to resolve here.

There are limitations regarding the number of disputes the Court can referee – and limitations regarding the amount of resources dedicated to any single case. The Court recognizes that this case is of great concern to the parties. The same can be said of the other active cases over which the undersigned presides. Roughly half of them involve potential deprivations of autonomy, physical liberty and freedom. This case is important, but each participant is free to leave the courthouse and do as they wish when recess is declared.

It is not fair to the many other litigants for the Court to act as a de facto special master in any case. The present filings, and the parties' first attempts at joint submissions, would call for it. If they wish, the Court will entertain a joint motion to stay so that a special master may be appointed, at the parties' expense. Then, counsel are free to raise as many disputes as they wish, with the meter running. Once every imaginable dispute is asserted and resolved, the case will be returned for trial. If that is what the parties wanted, they probably would have asked by now.

The matters in these Motions will be resolved in real time, on the moving parties' clock, as and when relevant. Squabbles over minutiae will cut into both side's time. *See generally* In re Incidents at Kopy's Bar, 2024 WL 5056403, *1 (W.D. Pa. Dec. 10, 2024) ("[e]very dispute draws time and resources . . .from other[s]," and counsel should consider which "battles to fight and hills [are] worth dying on"); *cf. also generally* Jones v. Barnes, 463 U.S. 745, 753 (1983) ("[e]ven in a court that imposes no . . . limits," advocacy that pursues "every colorable issue runs the risk of burying good arguments" in an indistinguishable "mound . . . of strong and weak contentions"). If the Court determines that any side unjustifiably is delaying the proceedings, corrective measures will be taken.

**Doc. 375  Plaintiffs' Motion to Exclude Evidence that Defendants Received Advice of Counsel Regarding the Mallet Employee Covenants**

This Motion is **DENIED**, with explanation.  Defendants insinuate that, to introduce evidence related to Mr. Zhou and his covenants, Plaintiffs were required to plead a claim that Defendants interfered with them.  The Court disagrees.  Allowing evidence of advice-of-counsel would invite the jury to believe that advising counsel's view is superior, and otherwise confuse the issues.

Should Plaintiffs reference Mr. Zhou's covenants in support of punitive damages, however, defense counsel may be permitted to present the evidence.  If Defendants believe that Plaintiffs have opened the door, they should, before introducing evidence or eliciting testimony, request a sidebar or address it when the jury is on break.

**Doc. 378  Plaintiffs' Motion to Exclude Evidence Regarding Harms Visited on Defendants As a Result of This Litigation**

This Motion is **GRANTED**.  Evidence of what the litigation has caused is irrelevant, and intended to garner sympathy.  It also fails Rule 403 because, even assuming there is probative value, it is outweighed by unfair prejudice and will mislead the jury.  A request for litigation costs and attorney's fees would fail on additional grounds.  Defendants previously disclaimed them, *see* Doc. 286 at internal pg. 2, and recovery is unsupported in the law. Orbital Eng'g, Inc. v. Buchko, 2021 WL 5280927, *19 (W.D. Pa. Nov. 12, 2021) ("the gravamen of [the intentional interference] tort is the lost pecuniary benefits flowing from the contract itself," and consequential damages, if any, must "reasonably . . . be expected to result from the interference"); Warren Pub. Co. v. Spurlock, 2010 WL 760311, *6 (E.D. Pa. Mar. 3, 2010) (recovery is unavailable for an unfair competition claim).

**Doc. 384** **Plaintiffs' Motion to Exclude Evidence of the Competing Companies' Size and Condition**

This Motion is **DENIED**.  The request is too broad, and Defendants effectively have shown the various contexts in which the answer may be different.  There is insufficient context to grant the request.  Leonard v. Stemtech Health Sci., Inc., 981 F. Supp. 2d 273, 276-77 (D. Del. Oct. 3, 2013) (rejecting motion seeking to preclude evidence of financial condition and profits because the court lacked sufficient context to find it "clearly inadmissible on all potential grounds"); *accord* U.S. v. Taylor, 2023 WL 5417247, *17 (W.D. Pa. Aug. 22, 2023) (quoting Leonard's recognition that MILs "encompass[ing] broad classes of evidence should generally be deferred") (internal punctuation omitted).  The denial is without prejudice, although counsel should consider their oft-stated concerns about "wast[ing] time."  Doc. 385 at internal pg. 2.  Repeated objections and responses in these areas do not seem a good use of it.

**EXPERTS MOTIONS**[2]

**Doc. 354** **Defendants' Motion to Preclude Plaintiffs' Damages Expert Robert McSorley**

As predicted on summary judgment, the claims for damages have resulted in a "battle of the experts."  Doc. 313 at 3.  Most of Defendants' criticisms could be leveled against their own

---

[2]  The Court possesses sufficient information to resolve the expert issues without a hearing. Multiple Energy Techs., LLC v. Under Armour, Inc., 2025 WL 82336, *1 (W.D. Jan. 13, 2025) (finding a hearing unnecessary, "owing to the well-developed record, including the experts' reports, the deposition testimony and extensive briefing"); *see also* Antonio v. Progressive Ins. Co., 795 Fed. Appx. 128, 131 (3d Cir. Jan. 8, 2020) (recognizing trial courts' discretion to forgo a hearing when the record is sufficient) (citing and quoting the published, binding decision in Oddi v. Ford Motor Co., 234 F.3d 136, 153-54 (3d Cir. 2000)).  This is good news for anyone hoping to see this legal saga reach a conclusion.  Given the intense advocacy offered at every turn, there is no small risk that a hearing would delay the trial dates, which have held steady for over four months now.  *See* FPTO (Doc. 326, entered Oct. 24, 2024).

expert, Douglas King (who Plaintiffs do not challenge).  Defendants' Motion to preclude
McSorley is **DENIED**, subject to the following clarification.

Defendants have not convinced the Court that McSorley's "head start" methodology is
unsound.  Plaintiffs' assertion that he "has expertise sufficient to provide an opinion on the head
start period," however, is not quite right.  Doc.416 at internal pg. 5; *see id.* at 5-7 (implicitly
acknowledging that McSorley lacks expertise regarding the baking industry and shifting the
focus to McSorley's expertise in calculating damages).  McSorley's opinions will be admissible
if they are supported by facts and data as outlined in Rule 703.  The Court does not believe the
facts are likely to qualify as ones that "experts in the particular field would reasonably rely on,"
as that phrase is understood.  In fact, the duration of the "head start" to be applied, if any,
is reserved for the jury.  Rule 705 governs whether experts are required to testify about
underlying facts or data before offering opinions.  Given the advocacy that has permeated every
aspect of this litigation, Plaintiffs' counsel should consider getting out in front of things and
offering the facts or data "as a preliminary" to the offering of opinions.  *See* Fed. R. Evid. 705
advisory comm. note.

Plaintiffs have rebuffed Defendants' legion other objections to McSorley, under Rules
702, 703 and *Daubert*.  They are, however, bound by all representations and assurances offered
in their opposition papers.

### Doc. 358  Defendants' Motion to Preclude Plaintiffs' Expert Chemist Eric Decker

This is the second area where both sides offer witnesses, and only Defendants level a
challenge.  Like the last one, the scenario invites comparisons of how their experts would fail
under the same reasoning.  Defendants have not shown that Decker should be excluded, for the
reasons stated in Plaintiffs' opposition papers.  The one caveat being, Defendants are correct that

Decker cannot opine that Lacayo "copied" any formula.  This treads on the role of the jury.

The Motion is **GRANTED** to this extent, and otherwise **DENIED**.

### Doc. 362  Defendants' Motion to Preclude Plaintiffs' Patent Expert Robert Stoll

Upon first seeing reference to patent lawyers, the undersigned thought—and this is not hyperbole—the filings were made in the wrong case.  Had decisions of prioritization been considered, this would have been an obvious place to start.  That Mr. Stoll is offered only to rebut Defendants' expert, David Oberdick, seems telling.

Hearing patent expert opinions in a trade secret and ex-employee-misappropriation case invites juror confusion; and, finally, reflects counsels' frequent aspersions of "wasting time." Fed. R. Evid. 403 (allowing exclusion on these bases).  They also do not help the jury.

The value of Mr. Oberdick's efforts was to help Defendants identify existing patents indicating that Plaintiffs' asserted trade secrets are publicly available.  He has done so, and Defendants seek their admission.[3]

---

[3] It should come as little surprise, Plaintiffs oppose.  Doc. 442-2 at pgs. 3, 57 & 58.  The cited filing is the parties' joint statement of disputes about admissibility/authenticity – a 151-page monstrosity mostly comprised of shrunken-font tables, stating opposing positions and leaving a little box for the Court's ruling.  The document was submitted one business day before the FPTC (technically, two days, although only six minutes remained in the second).  Doc. 442 at N.E.F. (filing time, 11:54 p.m.).  Counsel must think much of the Court, given the anticipated Conference agenda.  *See* Doc. 335 at pg. 61 of 65 (Defendants' topics include "[a]ny *Daubert* motions or motions in limine," there were seventeen filed; "[o]bjections to exhibits or deposition designations that the parties do not resolve"; "[a]ny disputed jury instructions"; and "[a]ny disagreement over the purported need for in camera review of alleged confidential information and/or alleged trade secret information").  The Court cannot, as a practical matter, meaningfully review and rule on the dozens of disputes identified in 442.  At the Conference, the Court may consider overarching issues that resolve many sub-disputes, and/or the parties may go back to the drawing board and try to reach agreement (now, with the benefit of the instant rulings).  Anything not resolved through those means will be ruled on during trial (while the jury is recessed, if possible).  If this impinges on presentation time, this is a bed of the parties and their counsels' making.  *See* discussion *infra*, at the close of this Order.

The Court has reviewed the expert reports of Messrs. Stoll and Oberdick and understands what Defendants had hoped to achieve. The patents are public record, however, and they speak for themselves. If Mr. Oberdick was hoped to opine on their contents and subject matter, they are outside his areas of specialty and unhelpful. *See* Dalgic v. Misericordia Univ., 2019 WL 2867236, *11 (M.D. Pa. Jul. 3, 2019) (opinions seeking "to explain a document that is readily understandable without the testimony of an expert" are inadmissible); *cf. also generally* U.S. v. Soler-Montalvo, 44 F.4th 1, 18 (1st Cir. 2022) (noting the concern that jurors "may be smitten by an expert's aura of special reliability and trustworthiness and therefore assign more weight to expert testimony than it deserves") (citations and internal quotations omitted).

Defendants' Motion is **GRANTED** for the reasons above, and patent experts will not be permitted. At the Conference, Plaintiffs must state whether they continue to oppose admission of the patents. The Court will not allow these types of rulings to strip Defendants of their "disclosure by patent" theory. Whether it is convincing is for the jury to decide. Counsel should strongly consider agreeing on how the foundation expediently may be laid, because a later ruling will be made on their trial clocks.

### Docs. 364 & 371  Motions Regarding the Other Side's Computer Forensics Expert

Contrary to Defendants' suggestion, Plaintiffs' expert, Mr. Reisman, does not opine regarding spoliation of evidence. The Court agrees with Plaintiffs that Defendants' challenges reflect a classic "battle of the experts" scenario. Regard the few instances of modest "spin" in Dr. Reisman's report, the Court has no intention of admitting any expert report into evidence,

let alone to the jury room.[4]  In any event, the Court trusts that the experts will refrain from gratuitous characterizations such as Mr. Reisman's description of Ms. Lacayo's "Mr. O" email as having a "seemingly innocuous" subject line.  Doc. 365 at 9-10.  Although Defendants make too much of it, the implication of the wording is obvious.

Turning to Defendants' expert, Mr. Creasy, what is good for the goose is good for the gander.  Plaintiffs' challenges to the forensic evidence fall in the battle of the experts category. Plaintiffs' Motion is meritorious, however, regarding opinions that Mallet did not take reasonable measures to protect confidential information.  Mr. Creasy cannot opine on whether Plaintiffs did enough, that is a jury question.  The Court disagrees with Defendants, moreover, that his reports offer opinions on industry customs and practices.  *Cf.* Ke v. Liberty Mut. Ins. Co., 2021 WL 5203150, *2-3 (E.D. Pa. Nov. 9, 2021).

Having scrutinized the record, the Court concludes that Mr. Creasy's opinions speak to his perceptions of *best practices*.  *See, e.g.*, Doc. 335-4 at pg. 9 of 89 (Creasy advises clients "on ways in which the business can protect its confidential information").  He helps clients avoid leakage and engages remediation when there are leaks.  The Court doubts that Creasy would say many or all of his clients fell below industry standards until he helped.  Opinions on best practices are different from the "industry standards" line of expert opinion.  *Compare* Pls.' cited cases, Doc. 392 at internal pgs. 9-11, *with* D.K. v. Abington Sch. Dist., 696 F.3d 233, 253-54 (3d Cir. 2012) (affirming the exclusion of an expert report regarding best practices) *and* Yazujian v. PetSmart, 729 Fed. Appx. 213, 216 (3d Cir. Apr. 17, 2018) (affirming preclusion of an expert

---

[4]  Counsels' positions regarding the admission of expert reports are borderline funny.  Each side levels hearsay objections to the admission of the other's side, but they see no problem with their own.  Doc. 442-1 at pgs. 72-73 of 80 *and* Doc. 442-2 at pgs. 14-15 of 66 (recognizing the silliness, but marching on).

who "sought to offer an opinion on his view of what the industry best practices were")

(non-binding decision, cited as persuasive authority only).  Mr. Creasy is not allowed to

influence the jury's perception through opinions that Mallet did not live up to his high standards.

*See* discussion *supra* (recognizing concerns with a jury being "smitten by an expert's aura of

special reliability").

 The Motions are **GRANTED** to the extent described above, and otherwise **DENIED**.


**Docs.  366 & 381  Dueling Experts Regarding Reverse Engineering**

 Defendants' putative expert, Lee Polite, would opine that certain of Mallet's formulas

easily may be reverse engineered.  Plaintiffs have highlighted a whopper of an objection:

**Polite was in possession of the formulas**.  Defendants attempt to reassure the Court that the

witness's "knowledge of the formulas [did] not impact [his] analysis."  Doc. 397 at internal pg. 8

(citing the expert rebuttal report).  The Court is uncomfored.  If any scenario in which having a

"script" is problematic, reverse engineering would be at the top.  *Compare* SI Handling Sys., Inc.

v. Heisley, 753 F.2d 1244, 1262 (3d Cir. 1985) (identifying "reli[ance] on . . . memory" as one

means of reverse engineering) *with* Doc. 397 at internal pg. 2 n.2 (emphasizing that the "samples

at issue in this case involve [only] five ingredients").

 Polite's opinions are tainted.  That he possessed the formulas in his reverse engineering

evaluation, is a self-inflicted wound from which Defendants cannot recover.  On this basis alone,

Polite is excluded.

 Plaintiffs also have failed adequately to respond regarding the Third Circuit's analysis in

this case.  Counsel attempt to brush it off in a footnote, *see* citation immediately *supra*, but it is

not so easy.  The Court wrote:

> The Defendants would . . . have us insulate trade secret thieves from liability as long as reverse engineering of a secret was hypothetically an available alternative to access the trade secret information. We decline to do so. The DTSA expressly addresses the relationship between reverse engineering and trade secret misappropriation. And it excludes reverse engineering from the type of conduct it defines as misappropriation. But while reverse engineering is a defense to misappropriation of [a] trade secrets claim, the <u>possibility</u> that a trade secret <u>might be</u> reverse engineered is not a defense. To hold otherwise would fly in the face of commonsense and allow a defendant to escape liability for unlawfully stealing trade secrets as long as someone might – <u>hypothetically and at unknown cost in time, effort, and money</u> – figure out some means to discover them through reverse engineering. There may be situations in which reverse engineering is so straightforward that <u>the distribution of a product is itself akin to a disclosure</u>. That kind of situation is, we believe, addressed in our comment in *SI Handling* [753 F.2d 1244, 1255 (3d Cir. 1985)] . . . .

*Mallet*, 16 F.4th at 388 n.31 (citations and internal quotations omitted, some alterations in original, emphasis added).

This "commonsense" understanding of *SI Handling* distinguishes it from prior, mostly non-binding, precedent that assumed reverse engineering was an unqualified defense. In this very case, the Circuit Court clarified the standard in a more recent, published decision, which controls. Defendants have not shown that Plaintiffs' "distribution of [their] product[s] is itself akin to a disclosure." If they did, the Circuit Court would have no reason to include the footnote; and, had the Court thought the issue was up for debate, it could have said so. It did not.

Plaintiffs' Motion is **GRANTED**, and Polite is out. The Motions seeking to exclude Plaintiffs' experts, whose only purposes were rebuttal, are **DENIED AS MOOT**.[5]

---

[5] Defendants' attempted transformation of Ronald Wilson into an expert fails. They list Wilson as both a fact witness and an expert witness. Doc. 335 at pgs. 56-57 of 65. The risks of dual-witnesses are obvious and many. *See* U.S. v. Alexander, 114 F.4th 967 (8th Cir. 2024) (listing them). Nevertheless, as an expert, Wilson is unqualified and his methodologies, if they can be called that, are unreliable. Plaintiffs do a good job showing why, *see* Doc. 374, and the explanations will not improve with repetition. The Motion (**Doc. 373**) regarding Wilson is **GRANTED**.

* * *

There are more than one elephants in the room.  Obvious ones include counsels' inability to cooperate, concede a point or "let anything go"; and their over-the-top compulsion to extreme advocacy.  But the biggest, most troubling one is their complete failure to adjust.

Upon discovering in the pretrial statements that the parties intended to present 24 separate fact witnesses, and 13 expert witnesses, the Court felt like it was peering into an alternate reality.  Counsel were told long ago how long they would be given for presentations. Some objected, but were overruled.  Maybe counsel "missed" that part, because they proceeded to file pretrial materials consistent with a trial lasting several weeks, if not months.

Counsel may pine for the alternate universe.  There, each side could luxuriate in weeks of presentation, litigating every hair on the impressive "mop" of a case they've nurtured. No adversarial itch would go unscratched, no theory forsaken.  But that is not what was offered, or ordered, in this plane of reality.

After fifteen years in private practice, and seventeen years on the bench, the undersigned has developed, and honed, a sense for how long trial should be in a given case.  These decisions are informed not only by experience, but also in jurors' ability to focus and maintain attention.

Some cases are inherently and unavoidably complicated, whether in fact or law. Others are uncomplicated.  Most, like this one, fall in between.  The trade secret aspects are the most complicated, but they do not warrant excursion into a months-long trial.  Plaintiffs' decision to pursue every alternative theory under state law it could conjure has not helped. They are not now obligated, nor have the ever been, to pursue every theory.  Experience dictates, many counsel do not part ways with claims or defenses easily, even if when an objective view causes head-shaking, and the utterance, "Why?"

The case is where it is, and, once a jury understands the major themes, its members do not appreciate being beaten over the head.  Nor have they been known to express joy and fascination when counsel venture down every tributary, in the hope of claiming small victories on the margins.

Counsel know, and have known all along, how much time they will have.  It was stated at the last Conference and memorialized in the Order setting pretrial deadlines and trial.  The Court expected counsel to exercise professional judgment and discretion, and find ways to pare things down.  This requires making difficult decisions.  Rather than grapple, both sides punted.

Perhaps counsel were banking on a change of heart, as trial days evaporate with the parties barely scratching the surface.  But that will not happen.  Any resulting difficulties cannot be pawned off on the Court, whose directives were crystal clear.  It is their failure to adjust.  And in no other case has it been so acute.

There still is time for adjustment.  For it to work, everyone will need to act with diligence and haste, writing on a new slate.  They will have to engage levels of agreement, cooperation and compromise thus far unknown.  They will have to make hard decisions.

If they cannot face such reckonings, the parties will remain in beds of their own making.  The evidence will be what fits, and their time will be over when the whistle sounds.[6]

IT IS SO ORDERED.

March 24, 2025                                              s/Cathy Bissoon
                                                           Cathy Bissoon
                                                           United States District Judge

---

[6]  In reliance of counsels' ability to comprehend and act in accordance with clear directives, the calendar for the week after trial has long been filled.  Additional time could not be afforded even if the Court were so inclined (and it obviously is not).

cc (via ECF email notification):

All Counsel of Record

Ada Lacayo, pro se (CM/ECF registered)

cc (via regular email):

William Chick Bowers, pro se (chica965@yahoo.com)