IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-cv-01409-CB |
| | ) | |
| v. | ) | Judge Cathy Bissoon |
| | ) | |
| ADA LACAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Plaintiffs' Motion (Doc. 455) to supplement (damages) expert McSorley's disclosures and to amend their pretrial statement will be granted. Because Defendants' damages expert – King – did not likewise update his disclosures, Plaintiffs – through McSorley – did it for him. Doc. 455 at ¶ 4. Defendants cry foul, claiming "McSorley presents a never before seen opinion regarding a one-year head start period." Doc. 459. This is a fairly significant mischaracterization, but were it not, the result would be the same.

The Court has held that the duration of a head-start period, if any, is a jury question. Doc. 447 at 7. If McSorley testifies regarding a one year head-start (rather than the three, four and five-year ones discussed in his disclosures), that would be within the scope – so long as he uses the same methodologies. *See generally* Bizich v. Festival Fun Parks, LLC, 2013 WL 3279558, *4 (W.D. Pa. Jun. 27, 2013) (Bissoon, D.J.) (experts may testify about matters *outside* their report if the information is within the scope). This is true whether McSorley offers testimony as to his own opinions, or King's (also addressed in his disclosures).

The Court will not punish Plaintiffs for transparency, although perhaps they should have anticipated Defendants would not respond kindly to their updating King's disclosures.

In the end, the whole discussion is trivial because there is no prejudice. McSorley's methodologies are well known to Defendants' counsel and their expert. One might think they would be glad to hear that Plaintiffs may, for a while at least, swim in the same waters (Defendants have urged a shorter head-start period). While this assumption makes sense in the abstract, it proves naïve in the context of this litigation.

Defendants' objection to McSorley's *downward* adjustment in his R&D calculations similarly lacks merit. These changes came from Plaintiffs' paring down the number of trade secrets asserted. They withdrew two of them in response to Defendants' MIL at Docket No. 348. The Court expressed its belief, based on analyses it need not repeat, that a further reduction may well benefit everyone, and the process. Doc. 447 at 3. The Court ordered Plaintiffs to revise their list, "[a]t a minimum," to remove the two withdrawn items. Doc. 449. Plaintiffs went the minimum, and beyond, and reduced the total number from 65 to 27. This seems a good thing, but litigation strategy apparently dictates that good things must be met with calls for punishment.

Defendants' cries of prejudice are unfounded. There has been no surprise. A week ago, they were facing a trial with more asserted secrets. Now they defend less. They are not prejudiced by subtraction. McSorley's supplementation of his disclosures, to reflect a reduction in R&D based on withdrawn trade secrets, is warranted.

Defendants' Motion (Doc. 460) to strike Plaintiffs' "newly disclosed bases" for trade secrets likewise ties into the reduction. In their brief, counsel claim that Plaintiffs have "done exactly what courts abhor – misleadingly tailoring trade secrets to suit the needs of the case." Doc. 461 at 3 n.3 (citing TLS Mgmt. & Mktg. Servs., LLC v. Rodriguez-Toledo, 966 F.3d 46, 51-52 (1st Cir. 2020). Defendants would be wrong. A party's reflecting on points

raised in orders, and acting in conformity, is something courts tend to favor. And, while "abhor" is a strong word, they tend to dislike when counsel cite cases out of context. TLS Management recognized that trade secrets – unlike patents, copyrights and trademarks – involve matters that are, well, secret. *Id.* at 51. Given that "the defendant is not necessarily on notice of the trade secret before litigation," the court noted concern over "the possibility" that the owner might "tailor the scope of the trade secret," as identified for the purposes of suit, "to conform to . . . litigation strategy." *Id.* at 52.

The concern is not implicated here. Defendants have revealed what they allege to be trade secrets. Both sides have been singing from the same hymnal for some time. All Plaintiffs have done is subtract items, thereby benefitting everyone, and the process. The cited source could not have been making more different a point, and the authority on-topic is 180 degrees counter. *See, e.g.*, 1 TRADE SECRETS LAW § 5:32 (Jager & Lane Aug. 2024) (a pleading "may be stricken if the plaintiff fails to comply with an order of the court requiring the identification of the trade secrets to narrow the issues for trial") (citation omitted, here and later).

Defendants' assertion that the evidence in support of the remaining items reveals "new trial theories" is disingenuous. Plaintiffs have done a good job explaining why. *See* Doc. 468. That all the documents were included with Plaintiffs' pretrial narrative statement pretty much sums things up.

Finally, the Court acknowledges both side's expressions of dissatisfaction regarding time afforded for trial. The reasons for the limitations, and their duration, have been explained. It is suboptimal to receive a Court directive and respond as if no one heard it. *See* Doc. 447

(noting counsels' "proceed[ing] to file pretrial materials consistent with a trial lasting several weeks, if not months").[1]  As highlighted in a decision cited by counsel:

> [Working within time limits] requires counsel to exercise a discipline of economy[,] choosing between what is important and what is less so.  It reduces the incidence of the judge interfering in strategic decisions.  It gives a cleaner, crisper, better-tried case.  It gives a much lower cost to the clients.  Finally, it will save months of our lives.

Duquesne Light Co. v. Westinghouse Elec. Corp., 66 F.3d 604, 609 (3d Cir. 1995).  The Court's call for discipline was greeted with actions that seemed to endorse a contrary view, namely, that the parties have "an absolute right to force upon an unwilling tribunal [and jury] an unending and superfluous mass of [evidence and issues] limited only by [their] own judgment and whim."  *Id.*

The Court knows that, in these matters, one may perceive the truth to lie somewhere in-between (to be clear, the Court does not).  Counsels' concerns are noted, and the Court will close by emphasizing points made in Duquesne Light.  "[A] court's resources are finite and [it] must dispose of much litigation.  In short, the litigants in a particular case do not own the [C]ourt."  *Id.* at 610.

The time limits imposed are commensurate with the *legitimate* needs of this litigation, and they are evenly distributed.  In re Baldwin, 700 F.3d 122, 129 (3d Cir. 2012) (denying mandamus relief where 16 defendants were restricted to 7.5 hours, combined).[2]

---

[1]  Optimality also may be considered in how to speak up.  This case presents a range, from dropping a resentment-tinged footnote, to tactfully stating one's position in the body of a conclusion section.

[2]  In denying relief, the Baldwin Court recommended a revisiting of the 7.5 hour limit, because "different liability rules and defenses" applied to the "sixteen individual defendants."  *Id. at 109 & n.5.*  This litigation essentially involves two sides.  It is not a difficult case.

Consistent with the above, Plaintiffs' Motion (**Doc. 455**) is **GRANTED** in its entirety and Defendants' Motion (**Doc. 460**) is **DENIED**.

IT IS SO ORDERED.


April 3, 2025                                                s/Cathy Bissoon
                                                             Cathy Bissoon
                                                             United States District Judge

cc (via email notification):

All Counsel of Record

Ada Lacayo, pro se (CM/ECF registered)

William Chick Bowers, pro se (chica965@yahoo.com)