IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-cv-01409-CB |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| ADA LACAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

**I.  MEMORANDUM**

From its inception, this case has be passionately and zealously litigated.  It is between two competing corporate-families operating in a relatively small, and familiar, market.  Most of the parties and witnesses have dedicated their careers to the industry.  The stakes, for them, could not be much higher.  They touch upon matters of core identity.  As is true in every trial, each party had a narrative.  Any narrative, repeated often enough, eventually becomes part of the speaker's truth.

After months and years of spending most waking hours litigating a case, parties, lawyers and even court staff may become "too close to it."  Introspection and self-examination are the only bulwarks against bias and myopia.  Should they fail, positions calcify and grow more extreme.  Things are done, in the heat of battle, that otherwise might be unrecognizable to a person under any other circumstances.

As a matter of necessity, rather than choice, the Court's business required it to "put down the file" in this case for some time.  Counsel surely have moved their attention to

other cases, with fires-closer.  The upside, hopefully, is that the case can be rejoined with a more tempered perspective.

The Court understands that the pressures of trial, and the perceived stakes, may affect participants' temperament, and judgment.  While some live largely free of regret, few have never wished they would have done some things differently.  This is not a reflection of character, but rather the human condition.  The Court hopes to extend this understanding to all involved.  No person is defined by a lawsuit, or its outcome.

Unfortunately for Defendants, their outcomes are far from what they hoped.  Plaintiff's Motion for sanctions (Doc. 519, redacted; Doc. 521, under seal) will be granted, and Plaintiff's counsel will be invited to submit a petition for the costs and fees regarding the Tallarico affidavit.  Defense counsel's explanations aim for plausible deniability, but fail the "plausible" part.  Counsel consistently observed the sealing protocols up until the subject filing, and then, without warning, deviated.  Plaintiff has debunked Defendants' reliance on opposing counsel's publication of an unsealed trial exhibit.  Doc. 530-1 at 1-3 (unredacted version filed under seal at Doc. 532).  Public revelation was highly inappropriate, and smacks of gamesmanship.  Sadly, Plaintiff's cynicism as to motivations appears warranted (i.e., diminishing trade secrecy, and positioning for appeal).  *Id.* at 4.[1]

While the conduct is indefensible, the Court imagines it more palatable from a perspective of righteousness, based on a conviction that one has "done nothing wrong."

---

[1] In its Reply, Plaintiff has raised valid concerns regarding other filings that, read together, allow for a connecting of dots that should not be connected.  Doc. 530-1 at 3-5 (unredacted at Doc. 532).  In response, the Court has adjusted the security level of Doc. 523 (but not its attachments) so that only Court staff and the case participants may view it.  Based on counsel's description, this appears an adequate remedy.  If Plaintiff believes that additional measures are necessary, it may file a motion for further relief by the deadline set below (January 16, 2026) – and leave to file it under seal (if necessary) hereby is granted.

*Cf.* Doc. 511-1 at ECF-header pg. 3 of 3 (defense counsel's statements in the media, post-trial, insisting that "Synova's products were created in a proprietary manner," and were "not a copy of any competitor's product"). Viewed outside the lens of humanity considered above, the consequences rightly would have been a lot worse.

The Court agrees with Plaintiff that permanent injunctive relief is warranted. The case law is consistent. Rohm & Haas Co. v. Adco Chem. Co., 689 F.2d 424, 433 (3d Cir. 1982) ("Plaintiff's amended complaint prays for a permanent injunction restraining the defendants from using or disclosing to others plaintiff's trade secret," and, "[u]nder . . . Pennsylvania law, plaintiff is entitled[.]") (citations, here and hereafter, omitted); *accord* PPG Indus. Inc. v. Jiangsu Tie Mao Glass Co. Ltd., 47 F.4th 156, 163-64 (3d Cir. 2022) (affirming permanent injunction on similar bases).

Defendants' waiver argument is rejected. Plaintiff's pleadings control over the parameters referenced in its pretrial narrative statement. The latter is not a pleading, and it reflected Plaintiff's position under entirely different circumstances. Doc. 526-1 at n.4 (Plaintiff's explanation).

No double recovery is threatened. The jury verdict addressed past misconduct, and the injunction protects against future harms. PPG v. Jiangsu, 47 F.4th 156, 163-64; *see also* 3M v. Pribyl, 259 F.3d 587, 608-609 (7th Cir. 2001) (the payment of damages is "largely irrelevant" to the court's decision on injunctive relief, which hinges on the likelihood of future harm; "[o]ftentimes, the greatest loss that results from a misappropriation is the loss of the right not to divulge a trade secret, regardless of price") (cleaned up).

Among other things, the jury determined that all Defendants "improperly used (misappropriated) Mallet's trade secret(s)"; it specified which ones; it found that Plaintiff was

harmed as a result; it awarded $2.5 million in compensatory damages; it found the corporate Defendants' misappropriation "willful and malicious"; and it awarded punitive damages against both companies, on every available claim. Doc. 496. Defendants' past violations inform the threat of future misconduct,[2] and Defendants' post-verdict conduct does little to dispel concerns.

The Court rejects Defendants' assertion that no evidence showed Synova's Supra 130 to be "inextricably connected" with recognized trade secrets. Counsel trot out the same theories presented to the jury, which did not persuade. The jury's finding that Defendants "improperly used" Plaintiff's trade secrets, along with the other evidence presented, allows (if not compels) the conclusion that Supra 130 improperly relied on Mallet's protected information. Matters of injunctive relief are reserved for the Court, moreover,[3] and the undersigned independently determines, by a strong preponderance of the evidence, that Supra 130 is inextricably intertwined. A production ban, therefore, is warranted.

Defendants' assertion that Plaintiff's proposed injunction is too broad and indefinite likewise is rejected. In these regards, the Court finds Plaintiff's proposals to meet the descriptions in 3M v. Pribyl:

> [They] do[] nothing more than prohibit the defendants from [using or] disclosing the trade secret[s]. . . . [T]o curb the misconduct and evasive action of defendant[s], no opportunity for loopholes should be allowed. . . . Rule 65(d) does not require the impossible. There is a limit to what words can convey. The more specific the order, the more opportunities for evasion. Rule 65(d)'s specificity requirement does not demand that the court issuing the injunction disclose the trade secrets in its order[, and the fact] that certain materials falling within the trade secret[s] are public information . . . [is ameliorated by the rule

---

[2] Qorvo, Inc. v. Akoustis Techs., Inc., 2024 WL 5336415, *2 (D. Del. Oct. 11, 2024).

[3] McCarthy v. Fuller, 810 F.3d 456, 462 (7th Cir. 2015) (a permanent injunction may be based on the court's "own evaluation of the evidence"); 3M v. Pribyl, 259 F.3d at 596-97 (affirming entry of permanent injunction based on the district court's factual determinations).

4

>that] injunctions are construed narrowly, with close questions . . . [regarding enforcement] being resolved in the defendant[s'] favor.

Id. at 598.

Defendants' remaining arguments do not overcome the need for injunctive relief. Their frequent assurances and minimizations offer little comfort. The jury found the corporate Defendants' misappropriation willful and malicious, and so too does the Court. The findings on Plaintiffs' other counts likewise favor injunctive relief. The 4-year limitation is appropriate, given Defendants' failure to persuade the jury, or the Court, that Mallet's trade secrets were reverse-engineerable; or independently developed. *Compare* Doc. 526-1 at 7 n.5 (citing jury instructions on those defenses) *with* Insulet Corp. v. EOFlow Co., Ltd., 779 F.Supp.3d 124, 135 (D. Mass. 2025) ("without any evidence that [the] plaintiff's trade secrets could actually be independently developed in a specified amount of time, a permanent injunction is appropriate"). That the injunction might "remove Synova's best-selling product from the market and . . . Synova with it" is unfortunate. Doc. 514 at 1. "But a defendant cannot escape an injunction simply because . . . its primary product is an infringing one." Insulet at 133. Nothing prohibits Synova from developing another product through legal means, without the benefit of misappropriated trade secrets; and requiring Plaintiff to compete with its own product imposes an unjust burden that far outweighs Defendants' justifiable consequences. *Id.*

Plaintiff's other arguments are incorporated by reference, and the Court will adopt its proposed order – separately (and with modest revisions) – shortly. Meanwhile, the Court will set a deadline for Plaintiff to submit its petition for costs and fees regarding the Tallarico affidavit. By the same deadline, Defendants may file a response to Plaintiff's request for the return of its preliminary injunction bond. Doc. 543 at 7. Judgment under Rule 58 will be held

in abeyance until the loose ends are resolved (but not the bill of costs, which will proceed independently, *see* Dkt. Notice from Clerk of Ct. dated June 17, 2025).

Defendants' renewed Motion under Rule 50(b) (Doc. 534) will be denied. The Court agrees with Plaintiff that:

•      Defendants have forfeited their argument that Mallet failed to present evidence in support of Trade Secret Nos. 14, 20 or 50 (listed in Doc. 451, file under seal); and, even had they not, the information was entered through the exhibits listed in Doc. 562 at pg. 2;

•      Plaintiff introduced ample evidence of the trade secrets' value;

•      Defendants failed to persuade the jury or the Court that Plaintiff's formulas were subject to reverse-engineering;

•      there was sufficient evidence for the jury to conclude that Defendants "improperly used (misappropriated)" the Trade Secrets;

•      Plaintiff introduced sufficient evidence of its reasonable measures to preserve secrecy;

•      the jury's award of damages was supported by record evidence – and Defendants' other arguments regarding damages have been forfeited and are without merit;

•      there were ample grounds for the jury to award punitive damages;

•      Defendants' arguments regarding preemption, and duplicative damages, have been forfeited, and also are without merit; and

•      the jury's determinations, and awards, on the other state law claims are supportable.

Defendants' challenges are too many, and too diffused, to discuss in a granular fashion. Recurrent themes are, counsel's wishing the evidence supported their theories, when it did not; hoping that Plaintiff's evidence favored Defendants' positions, also not; and the projection of speculative and unwarranted findings on the jury verdict. Otherwise, Plaintiff's arguments in Doc. 562 (unredacted, at sealed Doc. 565) are incorporated by reference.

Defendants' Motion under Rule 59 (Doc. 536) likewise is without merit. There has been no manifest injustice, no irreconcilable inconsistencies in the verdict. The same observations regarding Rule 50(b), above, apply here. It is as though Defendants attended a different trial than everyone else. Many of their evidentiary objections have been forfeited, and those that have not lack merit. Otherwise, Plaintiff's arguments in Doc. 563 (unredacted, in sealed Doc. 566) are incorporated by reference.

The only matter warranting additional comment is the verdict form's contents regarding tortious interference. Doc. 496, Sec. Five. The jury found that the corporate Defendants tortiously interfered with Plaintiff's agreements; that this caused Plaintiff harm; and it awarded $250,000 in compensatory damages, and $250,000 in punitive damages, against Bundy and Synova, each. *Id.*

Question 2 asked:

> Has Mallet proven by a preponderance of the evidence that Bundy's or Synova's actions in connection with the Mallet agreement(s) were <u>not</u> justified or privileged?"

Doc. 496 at 10 (emphasis in original). The jury checked boxes corresponding with, "No." *Id.*

The Court acknowledges use of a "double negative," which resulted from Plaintiff's having the burden. The parties' joint proposed verdict slip avoided the issue by placing the burden on Defendants. Doc. 431 at 27 ("Did Bundy and/or Synova prove by a preponderance of evidence that their actions in interfering with the contracts were justified or privileged?").

Were it so easy. While there is some disagreement in Pennsylvania,[4] its supreme court has not spoken – and the Court of Appeals for the Third Circuit has. "Under Pennsylvania law,

---

[4] *Compare* Kane v. Pisani, 2022 WL 1639239, *6 (Pa. Commw. May 24, 2022) ("Importantly, as an essential element of the tort, it is the plaintiff's burden to prove the absence of privilege or

7

the *elements* of . . . intentional interference" include "the absence of privilege or justification on the part of the defendant." Crivelli v. Gen. Motors Corp., 215 F.3d 386, 394 (3d Cir. 2000) (emphasis added). The Third Circuit's interpretation is binding, and the verdict slip followed.

Defendants seize upon the seemingly inconsistent finding, but the Court believes the truth apparent and obvious. The jury's answers *only* make sense if the "no" meant, there was no privilege or justification. "[A] jury verdict inconsistent on its face does not require a new trial if the inconsistency may reasonably be attributed to the jury's misunderstanding of the instructions." Silverberg v. Paine, Webber, Jackson & Curtis, Inc., 710 F.2d 678, 685 (11th Cir. 1983). Invocation of this rule should be exceedingly rare. But if the shoe ever fits, it does so here.

Indications of the jury's intention to impose liability could not be clearer. It found for Plaintiff on every count, and imposed punitive damages in each instance they were available, including tortious interference itself. If manifest injustice is to attach, it would do so through perceived constraint to Defendants' position.

And the issue was waived. Defense counsel did not raise it before the jury was excused. They claim to have been deprived "the opportunity to object . . . prior to the jury being discharged, and thus should not be considered to have waived." Doc. 568 at 3-4. Untrue. After the jury entered its verdict, the Court directed its members return to the jury room and wait. Doc. 505 at 321-22. Before declaring recess, the undersigned specifically invited input

---

justification on the part of the defendant.") (citing and quoting Orange Stones Co. v. City of Reading, 87 A.3d 1014, 1025 (Pa. Commw. 2016)) *with* Salsgiver Commc'ns, Inc. v. Consol. Commc'ns Holdings, Inc., 150 A.3d 957, 964 n.8 (Pa. Super. 2016) (discussing, in a multi-layer footnote, how Pennsylvania law has "diverged on the issue of whether the plaintiff or the defendant ha[s] the burden of pleading and proving the absence of privilege or justification").

from counsel and the pro se parties. *Id.* Plaintiff's counsel took the opportunity, Defendants did not. *See id.*

Plaintiff's Motion for pre-judgment interest (Doc. 542) will be granted. Defendants concede that prejudgment interest may be granted on equitable grounds, Doc. 559 at 8-9, and in this case it is warranted. Claims that Plaintiff lacked diligence in prosecuting the case are, in the Court's view, demonstrably false. The equities dictate that Mallet should be whole, and Defendants' countervailing arguments are unpersuasive. Prejudgment interest will be entered in the amount requested. Post-judgment interest is automatic and does not require a court order. Christian v. Joseph, 15 F.3d 296, 298 (3d Cir. 1994).

Finally, Plaintiff's Motion for costs and attorney's fees (Doc. 577) will be granted. Defendants' generic challenges do not convince the Court that any of the billings should be sullied. Plaintiff counsel, former and current, have provided detailed billing statements. Counsel reduced their rates for Plaintiff's benefit, and the reduction flows through to Defendants. Rates were commensurate with counsels' levels of expertise, and the complexity of the case. This was true before the rate-reductions. After them, the Court is even more comfortable in its conclusion.

Prior counsel's expenses were significantly higher, but that is explained by the significant e-discovery charges. Doc. 578-10 at 9, ¶ 46.

*   *   *

Although it may not seem so to Defendants, the Court has afforded as much grace here as is possible. Some results are so clear, and resounding, that they cannot be "spun." Defendants also will, in all likelihood, live to fight another day.

The undersigned hopes that the brief period of inactivity here reminded everyone, there is life outside this litigation. While unquestionably important, the case – like all else – will pass. No matter how good or bad the feeling presently, the Court is certain that no one, client or lawyer, is defined by Civil Action Number 19-1409.

Consistent with the above, the Court hereby enters the following:

## II.  ORDER

Plaintiff's Motion for sanctions (**Doc. 519**, redacted; and **Doc. 521**, sealed) is **GRANTED**; Plaintiff's Motion for a permanent injunction (**Doc. 510**) is **GRANTED**; Defendants' renewed Motion (**Doc. 534**) under Rule 50(b) is **DENIED**; Defendants' Motion (**Doc. 536**) under Rule 59 is **DENIED**; Plaintiff's Motion for pre-judgment interest (**Doc. 542**) is **GRANTED**, and **$617,535.00 pre-judgment interest is awarded**; Plaintiff's Motion for costs and attorney's fees (**Doc. 577**) is **GRANTED**, and $10,992,227.89 in attorney fees, and $405,646.26 in costs and expenses, are awarded, for a **total award of $11,397,874.15** (exclusive of Plaintiff's costs and fees in connection with the Tallarico affidavit).

By **January 16, 2026**:  (a) Plaintiff shall file a petition (docketed as a motion) for costs and fees regarding the Tallarico affidavit; and (b) Defendants shall file a response regarding Plaintiff's request for the return of its $500,000.00 preliminary injunction bond. The entry of judgement under Rule 58 is held in abeyance until these final matters are resolved.

IT IS SO ORDERED.

December 31, 2025                                             s/Cathy Bissoon
                                                              Cathy Bissoon
                                                              Chief United States District Judge

cc (via email notification):

All Counsel of Record

Ada Lacayo, pro se (CM/ECF registered)

William Chick Bowers, pro se (chica965@yahoo.com)