**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| MALLET AND COMPANY INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:19-cv-01409-CB |
| | ) | |
| v. | ) | Chief Judge Cathy Bissoon |
| | ) | |
| ADA LACAYO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PERMANENT INJUNCTION ORDER**

Upon consideration of Plaintiff Mallet and Company Inc.'s Motion for Permanent Injunction, pursuant to the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836(b)(3)(A)(i), the Pennsylvania Uniform Trade Secrets Act, 12 P.S. § 5303(a), the evidence adduced during the trial of the above-captioned action, and the jury verdict rendered on April 11, 2025 and for good cause,

IT IS HEREBY ORDERED that Defendants Russell T. Bundy Associates, Inc. d/b/a Bundy Baking Solutions ("Bundy"), Synova, LLC ("Synova"), Ada Lacayo ("Ms. Lacayo"), and William "Chick" Bowers ("Mr. Bowers") (collectively, "Defendants") are immediately prohibited, enjoined, and restrained as follows:[1]

[1] At times, Bundy and Synova collectively will be referred to as, "the Corporate Defendants." With sadness, the Court memorializes, here, the passing of Defendant Ada Lacayo. *See* Doc. 613. References to "Ms. Lacayo" should be understood to mean her successor or representative, as contemplated under Federal Rule 25. Directives to Ms. Lacayo's representative (if any), shall be read to imbue a standard of, "as reasonably practicable." Finally, the Court notes that the 90-day window for motion(s) under Rule 25 began to run on October 6, 2026, upon the filing of Doc. 613.

1) <u>Permanent Injunction on Use of Mallet's Trade Secret Information</u>

a. Defendants, their officers, agents, servants, employees, distributors, and resellers of any type, and all those persons in active concert or participation with any of them who receive actual notice of this order by personal service or otherwise, are permanently enjoined as of the date of this Order from performing any of the following actions:

i. Possessing, accessing, reviewing, using, or disclosing Mallet's Asserted Trade Secret Nos. 14 (FG423 Vegalube Super Sun Release formula), 19 (FG427 Vegalube Super P Release formula), 20 (FG434 Thriftee EZ Release, NH formula), 27 (FG476 Thriftee Gold Release formula), 44 (Trough Grease L formula), 45 (Vegalube Super P formula), 50 (D-pan 60 formula), 51 (Canadian Special P formula), 62 (Vegalube Super P, NH formula), 64 (2016 Customer pricing/invoice information), 65 (Vegalube Super P Pan Oil Usage Comparison), all of which the jury found qualified as trade secrets and were misappropriated by the Defendants (see ECF No. 496) (collectively, "Mallet's Trade Secrets").

ii. Making, having others make, selling, offering for sale, distributing, or otherwise commercializing anywhere in the world Synova's Supra 130 product, any product with a substantially similar formula, and/or any product derived from Mallet's trade secrets. This includes Synova's Supra 130 product as currently formulated, the formula of which is nearly identical to Mallet's Super P, NH formula. This also includes any future Synova products derived from Supra 130's current formula as well as any future products derived from Mallet's Trade Secrets. (See ECF No. 294-8, Ex. A at 44 (Figure 16), n.338 (noting that Synova identified Supra 130 as equivalent to Mallet's Super P formula)).

2) <u>Removal, Quarantine, and Destruction of Mallet's Trade Secrets, Non-Public Formulas, and Other Business Confidential Information</u>

a. Defendants, their officers, agents, servants, employees, distributors and resellers of any type, and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, shall undertake the following steps to remove from their possession and quarantine all of Mallet's Trade Secrets, Mallet's confidential non-public formulas as reflected in Trial Ex. P-050 (formulas from Ms. Lacayo's home), Trial Ex. P-004 (formulas from Dr. Zhou), and Trial Ex. P-008 (formulas provided to the Bundys from Mr. Galicic), (collectively, "Mallet's Non-Public Formulas"), and any information containing, concerning, or reflecting Mallet's Trade Secrets or Mallet's Non-Public Formulas ("Documents Reflecting Mallet's Trade Secrets and Non-Public Formulas"):

i. The Corporate Defendants will, at their own expense, engage an e-discovery vendor, approved by Mallet, to assist with the identification, collection, and removal of all of Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas.

ii. The Corporate Defendants' third-party e-discovery vendor will inspect all data sources in the Defendants' possession that may contain Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and NonPublic Formulas, including but not limited to:

1. Ms. Lacayo's cell phones, computers, iPad, USB drives, cloud-based storage accounts, OneNote accounts, personal email accounts (such as ada.lacayo@gmail.com, adalacayo@protonmail.com), and her Synova/Bundy

work email accounts (such as alacayo@synovaoil.com) – *but see* fn.1, *supra* (invoking a standard of reasonable practicability);

2. Mr. Bowers's cell phones, computers, iPads, cloud-based storage accounts, personal email accounts (such as cbowers@reagan.com, chickocean@icloud.com, chrltbow@aol.com), and Mr. Bowers's Bundy/Synova email account (wbowers@ synovaoil.com); and

3. Bundy and Synova's company servers, databases, document management systems, as well as the email accounts for all custodians in this litigation (such as Bob Bundy's personal and work email accounts);

iii. Once the third-party e-discovery vendor has inspected all data sources in the Defendant's possession that may contain Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas, and identified all of Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and NonPublic Formulas that were in Defendants' possession, Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas will be collected and quarantined by the vendor, and removed from all data sources in Defendants' possession. The vendor will provide Mallet with a copy of each file containing Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas that was found in Defendants' possession; <u>the vendor must provide to the parties (other than Ms. Lacayo) a removal/destruction log</u>; and the vendor will then permanently

destroy any such files. Mallet must retain the files identified in the removal/ destruction log, and, should any Defendant believe that good cause exists for the return of a file or files to the Defendant, in redacted form, it may petition the Court accordingly. The Court retains jurisdiction for these purposes, and the parties must follow the dispute-resolution procedures identified in the undersigned's Practices & Procedures (including the required telephonic conference before proceeding to motions practice).

b. Each Defendant will also inspect paper files in their possession for Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas. If any such paper file containing Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas is found, the paper document will be sent to Mallet at that Defendant's expense. However, the efforts of Ms. Lacayo's representative(s) are subject to the reasonable practicability standard, and transmission shall be made in coordination with Plaintiff's counsel and at Plaintiff's expense.

c. Except for Ms. Lacayo, Defendants shall complete the identification, collection, quarantine, removal, and/or destruction of Mallet's Trade Secrets, Mallet's Non-Public Formulas, and Documents Containing Mallet's Trade Secrets and Non-Public Formulas within ninety (90) days of the date of this Order, and Defendants shall confirm under oath that they have complied with this Paragraph 2. In the event Defendants are unable to comply in this time frame, Defendants may file a motion for extension, including a

statement of Plaintiff's position. Efforts regarding Ms. Lacayo shall proceed as soon as is reasonably practicable.

d. Defendants, their officers, agents, servants, employees, distributors and resellers of any type, and attorneys, and all those persons in active concert or participation with any of them who receive actual notice of the Order by personal service or otherwise, may voluntarily undertake the above steps listed as in Paragraphs 2(a) through 2(c) to remove from their possession and quarantine any information concerning Mallet's sales, sales volume, sales methods, customers, identity of customers, identity of key purchasing personnel in the employ of customers, amount or kind of customer's purchases from Mallet, Mallet's sources of supply, formulae, processes, methods, machines, manufactures, compositions, ideas, improvements or inventions belong to Mallet or relating to Mallet's affairs ("Mallet's Confidential Information"). This Mallet Confidential Information may include confidential business information that Defendants have sequestered through its vendor, bit-x-bit, and/or another third-party discovery vendor hired pursuant to Paragraph 2(a) and any other confidential business information that is otherwise in their possession.

3) Specific Performance of Non-Disclosure Agreement by Mr. Bowers

a. The jury having found Defendants Ms. Lacayo and Mr. Bowers subject to covenants with Mallet in which they agreed to refrain from disclosing Mallet confidential information, Defendant Mr. Bowers shall specifically perform and comply with the confidentiality and non-disclosure obligations owed to Mallet as defined in his

restrictive covenant(s) with Mallet. These obligations shall continue indefinitely. Ms. Lacayo's representative(s) likewise shall refrain from disclosing Mallet confidential information, except as is directed in this Order.

4) <u>Protocol for Defendants' Hiring of Former Mallet Employees</u>

a. For a period of four (4) years from the date of this Order, the Corporate Defendants shall provide Mallet with seven (7) calendar days' notice if they intend to interview any current or former Mallet employee with a noncompete agreement for any position at Bundy, Synova, or any of their affiliates.

b. The jury having found that the nature of Mr. Bowers's work for Bundy and/or Synova made disclosure of Mallet's Confidential Information and Trade Secrets inevitable, Mr. Bowers hereby is prohibited from accepting any position at or working in any capacity, either as an employee or independent contractor, for Bundy, Synova, and any of its affiliates.

5) <u>Mallet's Audit Rights to Ensure Compliance with Injunction Order</u>

a. For a period of four (4) years, Mallet may – for cause shown and at its own expense – conduct audits of Defendants, their officers, agents, servants, employees, distributors and resellers of any type, and all those persons in active concert or participation with any of them who receive actual notice of the Order by personal service or otherwise, to ensure compliance with this Order, as follows:

i. Mallet may audit, through audits conducted by an independent third party not opposed by the Corporate Defendants,[2] and in compliance with the Protective Order in this case, the following data sources in Defendants' possession:

1. Any database or document management system in use by Defendants;

2. The mailboxes contained in Defendants' servers for all current custodians in this litigation, as well as each Bundy or Synova employee who is currently formulating, developing, manufacturing, advertising, or selling release agents;

3. Synova and Bundy computers, laptops, hard drives, and other storage media (including USB drives, network-based storage drives) belonging to all current custodians in this litigation, as well as each Bundy or Synova employee who is formulating, developing, manufacturing, advertising, or selling release agents; and

4. Paper files belonging to all current custodians in this litigation, as well as each Bundy or Synova employee who is currently formulating, developing, manufacturing, advertising, or selling release agents.

ii. The findings of such audits will be available only to Mallet's outside attorneys, the independent third party auditor, the Court, and the Defendants and their attorneys (except for Ms. Lacayo's representative(s), who are excluded from the remainder of this section).

---

[2] The Court does not intend for Plaintiff's cause-shown standard to be onerous. If Plaintiff's reasons rise above the level of frivolous, objections to auditing will be overruled in short order. If the parties cannot agree on an independent auditor, they shall file on the docket a status report, with each side proposing auditor(s). The Court will select an auditor, from the parties' list or of its own choosing.

iii. If the auditor finds that any Defendant may not be in compliance with the terms of this Order, the auditor shall provide written notice and a copy of his/her/its findings to Defendants and Mallet's in-house attorneys to permit Mallet to evaluate the reason(s) and extent of the Defendants' potential non-compliance.

iv. Audits may be conducted a maximum of once per calendar year, during the course of normal business hours, and upon electronic or written notice of at least five (5) business days to Defendants. The parties must make good faith efforts to conduct the audit in a manner least disruptive to Defendants' normal business activities.

b. For a period of four (4) years, Mallet may – at its own expense – conduct an annual products-audit, through one or more independent third parties (not opposed by the Corporate Defendants) and in compliance with the Protective Order in this case, to confirm Bundy and Synova's compliance with any injunctive relief precluding Defendants from using or disclosing any Mallet Trade Secret, including the right to audit all batch records for the Synova product that replaces its Supra 130 product, any Synova product that has a substantially similar formula to Supra 130, and/or any product derived from Mallet's Trade Secrets. Requests for judicial intervention must follow the dispute-resolution procedures identified in the undersigned's Practices & Procedures (including the required telephonic conference before proceeding to motions practice).

IT IS SO ORDERED.

October 27, 2026

s/Cathy Bissoon
Cathy Bissoon
Chief United States District Judge

cc (via email notification):

All Counsel of Record

William Chick Bowers, pro se (CM/ECF registered)